Esther BOONE and Ruth Bergquist,
Plaintiffs, Appellants and
Cross-Appellees,

v.

ESTATE of Halley D. NELSON, Defend-
ant, Appellee and Cross-Appellant.

Civ. No. 9397.

Supreme Court of North Dakota.

March 17, 1978.

Daniel J. Chapman, Bismarck, for plaintiffs, appellants and cross-appellees.

Zuger & Bucklin, Bismarck, for defendant, appellee and cross-appellant; argued by Robert V. Bolinske, Bismarck.

PAULSON, Judge.

This is an appeal from a summary judgment of the Burleigh County District Court entered on June 3, 1977.

On August 9, 1976, the personal representative of the Estate of Halley D. Nelson [hereinafter the Estate] filed a petition in the Burleigh County Probate Court requesting the formal probate of Nelson's will dated December 12, 1975. Esther Boone, a sister of the decedent, filed objections to the probate of the will on the grounds of lack of testamentary intent or capacity, undue influence, fraud, duress, and mistake.

Based upon a review of the pleadings, depositions, and affidavits filed in the case, the probate court, on October 25, 1976, entered summary judgment on behalf of the Estate, dismissing with prejudice all of the objections to the probate of the will which were raised by Esther Boone. On Novem-

ber 1, 1976, the probate court filed an order admitting the December 12, 1975, will to formal probate.

On December 1, 1976, Esther Boone and Ruth Bergquist filed, in the county court, a notice of appeal to the Burleigh County District Court from the probate court's order admitting the will to formal probate.

On February 23, 1977, the Estate filed, in district court, a motion to dismiss the appeal on the ground that a timely appeal had not been taken from the summary judgment entered by the probate court. In its motion to dismiss, the Estate asserted that the summary judgment was *res judicata* with regard to all objections to the probate of the will determined therein which had been raised by Esther Boone. The district court denied the Estate's motion to dismiss the appeal by an open court order rendered on April 29, 1977.

On June 3, 1977, the district court entered a summary judgment on behalf of the Estate based upon the pleadings, depositions, and affidavits filed in the case, in which the district court affirmed the probate court's order admitting the December 12, 1975, will to formal probate.

On this appeal Esther Boone and Ruth Bergquist request this court to reverse the summary judgment of the district court and to remand for a trial on the objections raised to the probate of the will. The Estate has filed a cross-appeal from the district court's order denying the motion to dismiss the appeal from probate court. We will first discuss the issues raised on the cross-appeal.

The Estate now cross-appeals from the district court's order denying the Estate's motion to dismiss the appeal from the probate court. The Estate contends that the summary judgment entered by the probate court, in which all of the objections to probate of the will raised by Esther Boone were dismissed with prejudice, was appealable, pursuant to § 30–26–01 of the North Dakota Century Code. The Estate further contends that no appeal was taken within thirty days from the entry of the summary judgment as required by § 30–26–03, N.D.

C.C., and that, as a consequence, the issues determined by the summary judgment became *res judicata,* barring Esther Boone and Ruth Bergquist from raising those issues in an appeal from the order of the probate court admitting the will to formal probate.

■ Pursuant to § 30–26–01, N.D.C.C., a person can appeal to the district court "a decree or any order affecting a substantial right made by a county court". To effect such an appeal, the appellant must file, in the county court, notice of the appeal within thirty days from and after the date of the order or decree pursuant to § 30–26–03, N.D.C.C. In the instant case, there was no appeal taken within thirty days from the summary judgment entered by the probate court. Assuming, *arguendo,* that the summary judgment was appealable, the failure to file a timely notice of appeal from the summary judgment as required by the statute, would render the issues decided therein *res judicata* and would bar subsequent relitigation of those issues in an appeal from the order admitting the will to probate. *See, In re Estate of Bjerke,* 181 N.W.2d 126 (N.D.1970); *In re Estate of Bjerke,* 137 N.W.2d 225 (N.D.1965); *Hubicki v. ACF Industries, Incorporated,* 484 F.2d 519 (3d Cir. 1973).

In the case of *In re Estate of Bjerke,* 181 N.W.2d 126 (N.D.1970), this court held that a county court order construing a will under the provisions of the Declaratory Judgments Act, Chapter 32–23, N.D.C.C., was an appealable order. Justice Erickstad, writing for a unanimous court, stated, 181 N.W.2d at 127:

"As the order appealed from in the first *Bjerke* matter is an order entered under the provisions of our Declaratory Judgments Act, Chapter 32–23, N.D.C.C., and thus is not merely an interlocutory order entered in the process of probating a will or administering an estate, we hold that it is res judicata of the issue decided by it."

■ Unlike the order appealed from in *Bjerke, supra,* the summary judgment of

the probate court in the instant case was entered in the process of probating Nelson's will. The probate court did not, in its summary judgment, admit the December 12, 1975, will to formal probate, nor did it determine that the will would be admitted to probate at a future date. The summary judgment merely dismissed the objections to probate of the will which had been raised as of that date by Esther Boone. The summary judgment did not foreclose the possibility that the December 12, 1975, will might never be admitted to probate on the basis, for example, of new objections raised by other parties. We conclude that the summary judgment entered by the probate court did not affect a substantial right and was not appealable under § 30–26–01, N.D. C.C.

■ Although the probate court labeled its dismissal of the objections to probate of the will as a "Summary Judgment", we believe the probate court's act was in the nature of an interlocutory order or a partial summary judgment which was not dispositive of all the issues before the court on the petition for formal probate of the will. A partial summary judgment or other form of decision, however designated, which adjudicates fewer than all of the claims or issues in a case is not a final appealable judgment unless the court, pursuant to Rule 54(b) of the North Dakota Rules of Civil Procedure, makes an express determination that there is no just reason for delay and an express direction for the entry of judgment. Rule 54(b), N.D.R.Civ.P.; *see Melland Firestone, Inc. v. Streich*, 226 N.W.2d 141 (N.D.1975); *Mitzel v. Schatz*, 167 N.W.2d 519 (N.D.1968); *Berg v. Kremers*, 154 N.W.2d 911 (N.D.1967); *Perdue v. Knudson*, 154 N.W.2d 908 (N.D.1967).

■ In the instant case, the probate court did not make an express determination, pursuant to Rule 54(b), N.D.R.Civ.P., that there was no just reason for delay. We conclude that the summary judgment of the probate court was not a final judgment and was not appealable. Consequently, the issues determined therein did not become res judicata, and those issues were

properly raised by Esther Boone and Ruth Bergquist in their timely appeal from the November 1, 1976, order admitting the will to formal probate. The district court did not err when it denied the Estate's motion to dismiss the appeal from the probate court.

The Estate of the Decedent, Halley D. Nelson, offered the December 12, 1975, will for probate as the last will and testament of the decedent. That will bequeathed a legacy of $5,000 to the decedent's grandniece, Charlotte Wahl. The balance of the decedent's property, both real and personal, was devised and bequeathed to the decedent's stepson, Leonard E. Lundberg. Esther Boone objected to the probate of the December 12, 1975, will on the grounds of lack of testamentary intent or capacity, undue influence, fraud, duress, and mistake. The probate court granted summary judgment on behalf of the Estate, dismissing the objections with prejudice. The probate court then entered an order admitting the December 12, 1975, will to formal probate. Two of the decedent's sisters, Esther Boone and Ruth Bergquist, appealed to the district court from that order of the probate court. The Estate moved for summary judgment, requesting the district court to affirm the probate court's order admitting the will to formal probate. Based upon the pleadings, depositions, and affidavits filed in the case, the district court determined that there existed no genuine issue as to any material fact and that the proponents of the December 12, 1975, will were entitled, as a matter of law, to have the will admitted to formal probate. Accordingly, the motion for summary judgment was granted.

On this appeal, Esther Boone and Ruth Bergquist assert that the district court erred when it granted the Estate's motion for summary judgment. They request this court to reverse and remand for a trial on the objections raised to the probate of the will.

■ There is a presumption of sanity and testamentary capacity. *In re Estate of Elmer*, 210 N.W.2d 815 (N.D.1973); *Kingdon v. Sybrant*, 158 N.W.2d 863 (N.D.1968).

When a will is contested on the ground that the testator did not have sufficient mental capacity to make a will, the contestant has the burden of establishing by competent evidence that at the time the will was made the testator did not have testamentary capacity. *Stormon v. Weiss,* 65 N.W.2d 475 (N.D.1954). Pursuant to Rule 56(c) of the North Dakota Rules of Civil Procedure, a motion for summary judgment will be granted only if, after taking the view of the evidence most favorable to the party against whom the summary judgment is sought, it appears that there is no genuine issue as to any material fact and that the party seeking summary judgment is entitled to it as a matter of law. *Ray Farmers Union Elevator Co. v. Weyrauch,* 238 N.W.2d 47 (N.D.1976); *Farmers Elevator Company v. David,* 234 N.W.2d 26 (N.D. 1975). The party who moves for a summary judgment has the burden of demonstrating clearly that there is no genuine issue of material fact. *Rice v. Chrysler Motors Corporation,* 198 N.W.2d 247 (N.D.1972).

The Estate, in support of its motion for summary judgment, filed a number of depositions in the district court, including those of the two appellants herein, Esther Boone and Ruth Bergquist. By their own testimony, through their depositions, Esther Boone and Ruth Bergquist admit that they have no knowledge of any fact which would support their allegations of lack of testamentary intent or capacity, undue influence, fraud, duress, or mistake. The following are relevant portions of Ruth Bergquist's deposition testimony as she was being questioned by an attorney for the Estate:

"Q. (Mr. Bolinske continuing) Mrs. Bergquist, your real reason for claiming that Lenny Lundberg shouldn't have this property is that you think you were entitled to it way back from your father; isn't that right?

"A. Well, that's the way I feel about it.

"Q. You think that you should have gotten your dad's land way back in the 1940's; right?

"A. Yes.

"Q. Is it your contention or claim that Lenny Lundberg unduly influenced Halley Nelson?

"A. I couldn't say that.

"Q. Okay. My question is, again: Are you claiming that anyone, Lenny Lundberg or anyone else, unduly influenced Halley Nelson in the making of Halley's will?

"A. I couldn't say that, no.

"Q. My question is: Are you claiming someone influenced Halley's mind in connection with Halley's will?

"A. It is possible. I think it is.

"Q. And I want to know who it is you think influenced his mind.

"A. I couldn't tell you.

"Q. Has anyone ever claimed or told you, Mrs. Bergquist, that Lenny Lundberg improperly influenced Halley Nelson?

"A. Not that I can say.

"Q. Mrs. Bergquist, have you observed any changes in personality of Halley Nelson in the last five years or unusual behavior of any type?

"A. Not that I can really say."

Esther Boone was also questioned by the attorneys for the Estate. Her testimony, through her deposition, also clearly demonstrates that she possessed no knowledge or basis of facts to support her allegations against probating the December 12, 1975, will. Relevant portions of her deposition testimony are as follows:

"Q. Let's try this question once again. You testified that you don't consider Lenny Lundberg a member of your family.

"A. No, he isn't.

"Q. And you have also testified that you feel that your father's land should have gone only to members of your family.

"A. Yes.

"Q. Okay. Now, I'm asking you whether that's the reason you don't feel Lenny Lundberg should inherit this land from Halley Nelson.

"A. Yes.

"Q. What other reasons, if any, do you have for feeling that Lenny Lundberg shouldn't get this land that formerly belonged to your father?

"A. That's it.

"Q. That's the only reason?

"A. Yes.

. . . . .

"Q. You are referring to the fact that you feel that Lenny Lundberg, if he gets this land, will in fact have land that you and your other sisters should have?

"A. Right.

"Q. And you think that that would be improper on Mr. Lundberg's behalf?

"A. Yes; very much. Very much. No honest person would do that.

"Q. Okay. Other than that, what has Lenny Lundberg done to cause you to believe that he has done anything improper in the outcome of—

"A. Nothing.

"Q. —of Halley Nelson's estate? Pardon me?

"A. Nothing.

. . . . .

"Q. Is that your claim, though, that Lenny Lundberg used duress to get Halley Nelson to dispose of his property as he did?

"A. He evidently did.

"Q. Okay. Tell me, please, each and every thing that Lenny Lundberg did to cause duress to Halley Nelson.

"A. I wasn't present.

. . . . .

"Q. Okay. You are telling me, then, that you are concluding from the fact that Lenny got everything that he must have done something improper to cause Halley to give him everything; is that right?

"A. Yes.

"Q. That's the only reason that you have for claiming that Lenny Lundberg has unduly influenced Halley Nelson; is that correct?

"A. Yes.

. . . . .

"Q. Let me finish that question. I'm asking you what specifically Lenny Lundberg did to put Halley Nelson under this stress or duress.

"A. I wouldn't know.

"Q. Do you know of anyone that does know?

"A. No.

. . . . .

"Q. Let's try once again. You have testified previously that you saw Halley Nelson on various occasions prior to his death. Now I am asking you: At any time during those events, did you observe anything about Halley Nelson which causes you to believe that the execution of his will was not a free and voluntary act on his part? Did he act in any unusual way?

"A. No.

"Q. What basis, then, do you have for claiming—

"A. I mean since—he hasn't been himself this last—well, practically a year.

"A. Tell me what you observed to cause you to believe that Halley Nelson did not execute his will as his own free and voluntary act.

"A. I don't recall.

. . . . .

"Q. Now, you also claim in here that there was undue influence exerted on Halley Nelson to get him to execute his will; is that correct?

"A. It would have to be.

"Q. Who are you claiming exerted this undue influence?

"A. I wouldn't know.

. . . . .

"Q. Are you accusing Lenny Lundberg of fraud?

"A. No. I don't know who it would be.

"Q. Who are you accusing of fraud?

"A. I don't know."

 Actions involving state of mind are among those kinds of cases which are not *usually* suited for disposition by summary judgment. *Zuraff v. Empire Fire & Marine Ins. Co.*, 252 N.W.2d 302 (N.D.1972). Nevertheless, cases in which a will is attacked on the ground of the testator's lack of mental capacity or the presence of fraud, duress, or undue influence, can be properly disposed of by summary judgment when the contestants to the will have failed to support their opposition to the summary judgment motion with sufficient facts showing that there is a genuine issue for trial. *Glenn v. Mann*, 234 Ga. 194, 214 S.E.2d 911 (1975); *In re Sherer's Estate*, 10 Ariz.App. 31, 455 P.2d 480 (1969); *In re Niquette's Estate*, 264 Cal.App.2d 976, 71 Cal.Rptr. 83 (1968); *In re Wilson's Estate*, 399 P.2d 1008 (Wyo.1965); *In re Nelson's Estate*, 227 Cal.App.2d 42, 38 Cal.Rptr. 459 (1964); *In re Goddard's Estate*, 164 Cal. App.2d 152, 330 P.2d 399 (1958). When a motion for summary judgment is made and supported as provided in Rule 56 of the North Dakota Rules of Civil Procedure, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in the rule, must set forth specific facts showing that there is a genuine issue for trial. *Johnson v. Community Development Corp., Etc.*, 222 N.W.2d 847 (N.D. 1974).

 In response to the depositions filed by the Estate in support of its motion for summary judgment, Esther Boone and Ruth Bergquist did not come forward with one evidential fact, by deposition, affidavit, or otherwise, which would support their allegations of fraud, duress, undue influence, or mistake.

In *Glenn v. Mann, supra*, the Georgia Supreme Court affirmed the Superior Court's grant of summary judgment to the proponents of a will. The contestants had attacked the will on the grounds of invalid execution, undue influence, fraud, misrepresentation, monomania, and mistake of fact. In her deposition the will contestant testified that she knew of no facts or witnesses in support of her allegations of fraud, monomania, misrepresentation, and undue influence. Consequently, the Georgia Supreme Court found no issue which would necessitate a trial, and the summary judgment was affirmed. In the instant case, both the appellants, Esther Boone and Ruth Bergquist, testified, through their depositions, that they have no knowledge of facts or witnesses to support their allegations of fraud, duress, undue influence, or mistake. Thus, no genuine issue of material fact has been raised for a trial upon these allegations.

 The only basis of objection to the probate of the will for which Esther Boone and Ruth Bergquist attempted to offer support was that of lack of testamentary capacity. To support that objection, they filed, with the district court, the affidavit of Anton Stumvoll, a friend of the decedent.

In his affidavit, Stumvoll stated that prior to November of 1975, Halley D. Nelson was "in his normal mental condition". Stumvoll made a trip to Texas, returning in April of 1976, approximately four months after Nelson had executed his December 12, 1975, will. Stumvoll stated that Nelson was not the "same person" and that Nelson "had spells of mental lapse during which his mind would wander and during which he would suddenly pause, holding his head in his hands and then abruptly proceed into another topic of conversation". On certain occasions, Nelson told Stumvoll that he was going to make a will and asked Stumvoll's opinion concerning possible disposition of his assets. On one occasion, Nelson mentioned to Stumvoll that he was going to change his will, and, during the spring and summer of 1976, Nelson told Stumvoll "they were putting pressure on him to make a will" and "they wanted his money", without disclosing who he was referring to by the

term "they". Based solely upon the foregoing facts and Stumvoll's affidavit, Esther Boone and Ruth Bergquist assert that they have created a genuine issue of material fact for trial regarding Halley D. Nelson's testamentary incapacity. We disagree.

In *Goddard, supra,* an action was brought to revoke the probate of a will on grounds of lack of testamentary capacity and undue influence. A summary judgment was entered against the will contestants and they appealed. In support of the contention that the testatrix lacked testamentary capacity, the contestants filed an affidavit of the sister to the testatrix's husband and a deposition of one of the contestants. The affidavit stated that the testatrix would telephone the affiant and "cry bitterly" and that the testatrix "could not and did not handle any of her affairs". The deposition of the will contestant stated that the testatrix was "very, very nervous"; that she would "cry and cry"; and that "she couldn't do anything for herself". The California Appellate Court affirmed the summary judgment and stated in *Goddard, supra,* 330 P.2d at 402, 403:

> "We fail to find in the foregoing any fact or facts which if testified to upon the trial would tend to establish that the testatrix did not possess testamentary capacity when executing her will . . .
>
> . . . . .
>
> "Liberally construed, the affidavits on behalf of the appellants fail to reveal any fact or facts from which it could be inferred that the testatrix, when executing her will, did not understand the nature of her act or that she was not cognizant of the nature and situation of her property or her relation to those having claims upon her bounty. Construing the statements in the affidavits on behalf of the appellants that the testatrix did not appear to be herself and that she was unable to handle her affairs as constituting expressions of opinion that testatrix was of unsound mind, they are wholly insufficient to establish that fact."

In the instant case, as in *Goddard, supra,* the statements in Anton Stumvoll's affidavit are insufficient to establish a genuine issue of material fact from which it could be inferred that Halley D. Nelson lacked testamentary mental capacity at the time he executed his will on December 12, 1975. The fact that there were occasions when Nelson would, during a conversation, "hold his head in his hands and then abruptly proceed into another topic of conversation" is wholly insufficient to raise a triable issue of fact as to whether he had the requisite mental capacity to execute a will four months prior to those occasions referred to in the affidavit.

Based upon the pleadings, affidavits, and depositions filed in this case, we conclude that the appellants, Esther Boone and Ruth Bergquist, have failed to raise a genuine issue of material fact in support of their objections to the probate of the decedent's December 12, 1975, will. Accordingly, the summary judgment entered by the district court is affirmed.

ERICKSTAD, C. J., and PEDERSON, VOGEL and SAND, JJ., concur.