**SCHROEDER AVIATION, INC.,**
Plaintiff and Appellant,

v.

**Dennis DeFEHR, Defendant
and Appellee.**

Civ. No. 9587.

Supreme Court of North Dakota.

Aug. 2, 1979.

Solberg, Stewart & Boulger, Fargo, for plaintiff and appellant; argued by Wayne O. Solberg, Fargo.

Stetson, Jones & Streich, Lisbon, for defendant and appellee; no appearance, submitted on the brief.

ERICKSTAD, Chief Justice, on reassignment.

In this case, the plaintiff, Schroeder Aviation, Inc., appeals from that part of a judgment rendered and entered in this action on the 6th day of October, 1978, which dismissed the complaint. The second part of the judgment from which no appeal was taken dismissed the counterclaim of the defendant, Dennis DeFehr. We shall hereinafter refer to the plaintiff as Schroeder and to the defendant as DeFehr. We reverse and remand.

In his complaint, Schroeder alleged that at DeFehr's request he sprayed 135 acres of sunflowers with agricultural chemical on or about June 8, 1977; that the value of the said material and services is $573.75; that demand has been made for the payment of this account and that DeFehr has failed and refused and continues to fail and refuse to pay said account; that the entire amount remains unpaid; and that, therefore, DeFehr is indebted to Schroeder for said aerial spraying in the amount of $573.75 plus interest from and after the 8th day of June, 1977.

In addition to asserting various affirmative defenses, DeFehr filed a counterclaim, the pertinent part of which reads:

"I.

"That on or about June 7, 1977 Defendant and Plaintiff entered into a verbal contract wherein Plaintiff was hired to spray 135 acres of sunflowers with an agricultural chemical which would kill cutworms.

"II.

"Plaintiff through its agent Darrol Schroeder represented that Plaintiff would spray 135 acres with agricultural chemical, put on at the legal limit, and that it would control the cutworm problem.

"III.

"That Plaintiff chose the agricultural chemical, the day, the time, and the tools and implements with which to apply the agricultural chemical, and on June 8, 1977 did spray the 135 acres.

"IV.

"That the Plaintiff misrepresented the quality of the goods sold to the Defendant, and the Defendant relied on those misrepresentations to his detriment and has been damaged in the sum of Five Hundred Sixty-seven and no/100ths Dollars ($567.00), representing seed necessary to re-seed the 135 acres; having been damaged in the sum of Three Hundred Thirty-seven and 50/100ths Dollars ($337.50), representing one digging and one dragging of the field; having been damaged in the sum of Six Hundred Seven and 50/100ths Dollars ($607.50), representing the cost of replanting the field; having been damaged in the sum of One Thousand Eight Hundred Ninety and no/100ths Dollars ($1,890.00), being the cost of extra drying necessary for having to harvest the 135 acres upon replanting, late in the fall with high moisture content."

To the answer and counterclaim, Schroeder filed an amended reply, the pertinent part of which asserts that the "claim of the defendant as set forth in his Counterclaim is barred for failure to give notice pursuant to Sections 28–01–40 and 28–01–41, N.D.C.C." [1]

The complaint was first filed in county court. When DeFehr filed a counterclaim asking for a judgment in the sum of $3,402 plus costs and disbursements pursuant to Section 27–08–42, N.D.C.C., the county court with increased jurisdiction concluded that the case was in excess of the jurisdiction of that court and, accordingly, transferred the case to the district court.

The district court, sitting as a judge without a jury, after hearing the case, entered findings of fact, conclusions of law, and ordered judgment as we have previously indicated. The pertinent findings and conclusions follow:

## "FINDINGS OF FACT

### "I.

"That Plaintiff Schroeder Aviation, Inc. was and still is a corporation organized and doing business under the laws of the State of North Dakota.

### "II.

"That the Defendant Dennis DeFehr is a resident of rural Enderlin, Ransom County, North Dakota.

### "III.

"That on June 8, 1977, Plaintiff sprayed approximately 135 acres of the Defendant's sunflowers with agricultural chemical.

### "IV.

"That Defendant Dennis DeFehr did order chemicals, but at the time of ordering chemicals that there were inadequate warnings given as to the limitations as to the effectiveness of the chemical.

### "V.

"That the chemical used by the Plaintiff was not misapplied and that the lost crops are not attributable to bad spray, but are attributable to the cut worms.

### "VI.

"That in the Plaintiff's Amended Reply to Affirmative Defense and Counterclaim, Plaintiff raised the issue of failure to give notice pursuant to Section 28–01–40 and 28–01–41 of the North Dakota Century Code. In fact, Defendant did not give notice as set out in said sections.

"From the foregoing Findings of Fact, the Court now makes the following:

## "CONCLUSIONS OF LAW

### "I.

"That Plaintiff's Amended Reply to Affirmative Defense and Counterclaim

---

1. "28–01–40. *Reports of loss through pesticide application required.*—No civil action shall be commenced arising out of the use or application of any herbicide, insecticide, fungicide or agricultural chemical by any applicator or operator, unless the claimant has filed a verified report of the loss with the state of North Dakota agriculture commissioner, together with proof of service of such verified report of loss upon the operator or applicator allegedly responsible and, *if the claimant is not the person for whom such work was done, then also the person for whom such work was done* within a period of sixty days from the occurrence of such loss or within sixty days from the date the claimant knew such loss had occurred, provided, however, if the damage is alleged to have been occasioned to growing crops, the report shall be filed prior to the time when fifty percent of the crop was harvested." § 28–01–40, N.D.C.C. [Emphasis added.]

"28–01–41. *Contents of verified reports of damage.*—The verified report of the loss as set forth in section 28–01–40 shall include, so far as known to the claimant, the following: name and address of claimant, type, kind, and location of property allegedly injured or damaged, date the alleged injury or damage occurred, name of operator or applicator allegedly responsible for such loss or damage, and *if the claimant is not the same person for whom such work was done, the name of the owner or occupant of the property for whom such operator or applicator was rendering labor or services.*" § 28–01–41, N.D.C.C. [Emphasis added.]

setting out failure to give notice pursuant to Section 28–01–40 and 28–01–41 of the North Dakota Century Code is not a valid defense, for the reason that as said statute applies to this case that said statute is unconstitutional.

"II.

"That Plaintiff is entitled to a dismissal of the Counterclaim by the Defendant.

"III.

"That Defendant is entitled to a dismissal of the Plaintiff's Complaint.

"IV.

"That costs will not be awarded to either party."

Schroeder asserts that the issues in this case result from the trial court's determination that Sections 28–01–40 and 28–01–41, N.D.C.C., are unconstitutional and from the trial court's determination that "plaintiff did not adequately advise the defendant".[2]

He states the issues as follows:

"1. Are Sections 28–01–40 and 28–01–41 of the North Dakota Century Code unconstitutional?

"2. Is the filing of a verified report as set forth in § 28–01–40 NDCC and § 28–01–41 NDCC a condition precedent to a counterclaim for damages upon an action for payment of the cost of application of the chemical?

"3. Is the filing of a verified report as set forth in § 28–01–40 NDCC and § 28–01–41 NDCC a condition precedent to the interposing of a defense to an action for payment of the cost of application of the chemical?

"4. Is the Court's finding that 'there were inadequate warnings given as to the limitations as to the effectiveness of the chemical' a valid defense to plaintiff's claim?

"5. Does the evidence sustain the verdict in this case?"

Let us first consider the issue of whether or not Sections 28–01–40 and 28–01–41, N.D.C.C., are constitutional. Without an opportunity to consider the case law on the subject, the trial court at the close of the trial, concluded that the statutes were unconstitutional.[3] Apparently what the trial court was critical of was that Section 28–01–40, as amended, *required that the verified report of loss* arising out of the use or application of any herbicide, insecticide, fungicide, or agricultural chemical, *be filed and served within a period of sixty days from the occurrence of such loss or within sixty days from the date the claimant knew such loss had occurred.*

■ DeFehr contends that this issue is moot for the reason that the trial court dismissed the counterclaim. He does not, however, cite any authority for this position.

Although we have often said that we do not give advisory opinions and thus will not decide constitutional issues unless required to do so to determine the issues on appeal, we believe that in this instance it is appropriate that we consider this issue. *In the Interest of N. N.,* 278 N.W.2d 150, 151–52 (N.D.1979). We do not believe the ends of justice would be furthered by postponing the determination of this issue. In any case, if the notice requirements apply to the interposition of a defense, the constitutionality of the notice requirements becomes an issue and, therefore, the issue is not moot.

■ Moving on to the merits of the issue of constitutionality, we conclude that the statutes are constitutional.

Incidentally, the italicized part of Sections 28–01–40 and 28–01–41, N.D.C.C. [see n. 1 *supra*], apparently resulted from Jus-

---

**2.** "plaintiff did not adequately advise the defendant of the fact that this chemical may or may not work, . . ."

**3.** The only support for the trial court's conclusion is the following statement made by the trial court at the end of the hearing: "It seems to me that that statute is extremely short, and I would feel that such a statute is unconstitutional."

tice Strutz's dissent in *Christensen v. Midstate Aerial Applicators Corp.,* 166 N.W.2d 386, 37 A.L.R.3d 827 (N.D.1969). In his dissent, Justice Strutz said:

"The purpose of requiring such notice is to enable the person against whom such claim is to be made to check the crop and to determine if, in fact, it was damaged as claimed.

\*    \*    \*    \*    \*    \*

"If we are to give the term 'claimant' the meaning given to it by the majority opinion, the entire statute may well be unconstitutional, since it might create an unreasonable classification of claimants, differentiating between those who are neighbors, who must file within sixty days, and those who are owners or occupants of the land which was sprayed, who would be subject only to the usual statute of limitations." 166 N.W.2d at 388–89.

It is interesting to note that no one in that case suggested or implied that the period of time within which to file the report was constitutionally suspect.

For our view of the constitutionality of these statutes, we rely upon *Herman v. Magnuson,* 277 N.W.2d 445 (N.D.1979), in which J. Vande Walle of our court very carefully and ably reviewed the decisions of this country involving the issues of due process and equal protection as they arise from the applications of statutes which require the filing of a claim as a condition precedent to the commencement of an action against political subdivisions. In *Herman* we upheld Section 40–42–02, N.D.C.C., which makes the filing of a notice a condition precedent to the institution of an action against a city, against the attack that it violated Herman's constitutional right of equal protection as guaranteed by the Fourteenth Amendment to the United States Constitution.

Although a notice requirement with a time limit of 30 days was struck down as being violative of the due process and the equal protection clauses of the West Virginia and the United States Constitutions in *Anderson v. City of Hinton,* W.Va., 242 S.E.2d 707 (1978), the majority of courts have upheld notice requirements, some as short as 30 days. *See e. g. McCann v. City of Lake Wales,* 144 So.2d 505 (Fla.1962) (30 days); *Saunders v. United States,* 150 F.Supp. 878 (D.C.Mass.1957) (30 days); *Geyer v. City of Logansport,* Ind., 370 N.E.2d 333 (1977) (60 days); *Pausley v. Chaloner,* 54 A.D.2d 131, 388 N.Y.S.2d 35 (1976), appeal dismissed, 41 N.Y.2d 900, 393 N.Y.S.2d 1029 (1979) (90 days); *Crowder v. Salt Lake County,* Utah, 552 P.2d 646 (1976) (90 days); *Sears v. Southworth,* Utah, 563 P.2d 192 (1977) (one year); *Espanola Housing Authority v. Atencio,* 90 N.M. 787, 568 P.2d 1233 (1977) (one year); *Ocampo v. City of Racine,* 28 Wis.2d 506, 137 N.W.2d 477 (1965) (120 days); *Gonser v. Bd. of Com'rs for Owen Cty.,* Ind.App., 378 N.E.2d 425 (1978) (180 days); *Parton v. City of Huntsville,* Ala., 362 So.2d 898 (1978) (6 months); *Johnson v. King,* 55 Ill.App.3d 336, 13 Ill. Dec. 323, 371 N.E.2d 18 (1977) (6 months); *Fuller v. Rutgers, State University,* 154 N.J.Super. 420, 381 A.2d 811 (1977) (90 days, but in court's discretion, one year), *cert. denied* 75 N.J. 610, 384 A.2d 840 (1978); *Panko v. Cook County,* 42 Ill.App.3d 912, 356 N.E.2d 859 (1976) (6 months).

Due process and equal protection issues were specifically raised and found not to be meritorious in *Binder v. City of Madison,* 72 Wis.2d 613, 241 N.W.2d 613 (1976); and *Shearer v. Perry Community Sch. Dist.,* Iowa, 236 N.W.2d 688 (1975); *but see Hobbs v. Michigan St. Highway Dept.,* 58 Mich. App. 189, 227 N.W.2d 286 (1975).

In *Herman v. Magnuson, supra,* J. Vande Walle, after analyzing *Forest v. Parmalee,* 402 Mich. 348, 262 N.W.2d 653 (1978), which is subsequent to *Hobbs v. Michigan St. Highway Dept., supra,* which is based upon the leading Michigan case of *Reich v. State Highway Dept.,* 386 Mich. 617, 194 N.W.2d 700 (1972), concludes that "*Forest* might be considered a shift in the position of the Michigan Court." *Herman v. Magnuson, supra* at 452, n. 16.

In the instant case, the notice requirements do not involve a governmental unit or a political subdivision; consequently, we

do not have the establishment of separate classes of tort feasors and victims. The issue is only over the shortness of the period.

■ We believe that the rational-basis test is applicable here in determining whether or not the statutes violate equal protection and due process clauses of our United States Constitution and the North Dakota Constitution. In light of the nature of the subject matter of the legislation, we think it reasonable that the Legislature may have balanced the interests. The right of one person to enforce a claim is balanced against the right of another to defend before time makes his proof difficult or impossible to obtain. We have applied the rational-basis test often, notwithstanding that in recent decisions we have recognized a need for strict judicial scrutiny when classifications were "inherently suspect" or involved a "fundamental interest". *State v. Knoefler,* 279 N.W.2d 658 (N.D.1979). This legislation does not come within those categories.

■ As no one has attempted to specify the grounds on which it is contended that the statute is unconstitutional in this case, we think it sufficient to conclude with the recognition of the presumption that legislation is constitutional. *See So. Valley Grain Dealers v. Bd. of Cty. Com'rs,* 257 N.W.2d 425, 434 (N.D.1977). As we said in *State v. Gamble Skogmo,* 144 N.W.2d 749, 752 (N.D. 1966), "State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality." *See also Snyder's Drug St., Inc. v. North Dakota St. Bd. of Ph.,* 219 N.W.2d 140, 153 (N.D.1974).

■ Let us next consider whether or not the requirement of filing a verified report pursuant to Section 28–01–40, N.D.C.C., and Section 28–01–41, N.D.C.C., applies to the making of a counterclaim, for damages, to a claim for payment of the cost of the application of the chemical.

In light of the general rule applicable in this area of the law, we conclude that a verified report must be filed and served prior to interposing a counterclaim.

■ The general rule is stated in 53 C.J.S. Limitations of Actions § 106, as follows:

"The statute of limitations runs against independent demands or causes of action against plaintiff set up by defendant in his pleadings. As a general rule, as discussed in the C.J.S. title Set-Off and Counterclaim § 10, also 57 C.J. p 372 note 3, a set-off, counterclaim, or plea in reconvention has the nature, characteristics, and effect of an independent action or suit by defendant against plaintiff. Accordingly, as a general rule, in the absence of a statute to the contrary, the statute of limitations may be pleaded to a set-off, and, likewise, the statute of limitations may be pleaded to a counterclaim, cross action or cross bill, or plea in reconvention."

The rule is otherwise stated in 54 C.J.S. Limitations of Actions § 285, as follows:

"In the absence of a statute to the contrary, a counterclaim or set-off is barred if limitations have run thereon before the commencement of the main action."

The Supreme Court of Michigan has recognized this rule in *Auditor General v. Olezniczak,* 302 Mich. 336, 4 N.W.2d 679 (1942), wherein that court held that a counterclaim upon an action for hospitalization costs was barred by the statute of limitations.

■ Having concluded that the requirement of the filing and serving of a verified report is applicable to a counterclaim, the third issue is whether it is also applicable to the making of a defense to an action for the payment of the cost of the application of the chemical. From a logical point of view, it would seem just as important in responding to a defense to receive timely notice so that the facts may be determined while they are still ascertainable, as to receive timely notice in conjunction with responding to a counterclaim or to an action or claim in the first instance. In all three instances, it is important to receive the notice in time to be able to determine the facts and make an appropriate response.

Notwithstanding this logic, we believe the nature of a defense must be considered on a case by case basis in order to determine whether or not the notice requirement is applicable. When the defense is, in fact, an offense, the statute should be applied and the notice required as a condition precedent to asserting the claimed defense. Here the defense is an offense.

In the instant case, we think the notice requirement applicable as there is no dispute over whether or not the chemicals that were requested were applied. The issue is not over performance, but over whether or not the applicator adequately warned the grower of sunflowers of all possibilities and especially the possibility that the spraying might not kill all the worms that were quickly destroying the sunflowers.

Having so concluded, we need not consider issues numbered 4 and 5.

For reasons stated in this opinion, the judgment is reversed and the case is remanded for entry of judgment in the amount stated in the complaint plus interest (from and after June 8, 1977) and costs.

SAND, PAULSON, PEDERSON and VANDE WALLE, JJ., concur.